IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER IRWIN, Plaintiff,  )
)
)
VS.  )
)
)
Warden Joe Pelzer, Deputy warden Temas John  )
Doe, Deputy warden Hamett John Doe, Head nurse  ) C.A.No. 04-246 Erie
Cheryl McGavitt, Nurse Esther Jane Doe, Nurse  )
Jill Jane Doe, Doctor Dirskin John Doe, Patrolman  )
Ronald Raymond, Chief James Horvath, Chartiers  )
Township Police Department, Sheriff John Doe  )
Doctor John Doe (U.P.M.C.)  )
DEFENDANTS.  )

## MOTION TO AMEND COMPLAINT

And now this date 28th day of March, 2005;
Plaintiff Christopher Irwin filed this Motion to Amend Complaint and is here by stated as follows;

On August 28,2004, the Plaintiff Christopher Irwin filed a complaint against the Washington County Correctional Facility Three nurses who it is believed are employed by the Washington County Correctional Facility. And Patrolman Ronald Raymond, Chartiers Township Police Department.

On March 22,2005, the defendant Chartiers Township Police Department and Patrolman Ronald Raymond filed a Motion to Dismiss.

Therefore based on this court order dated (March 22,2005) the Plaintiff has until (April 5,2005), to respond to the Motion in this case the Plaintiff wishes to Amend the Complaint and statement of Amend follows;

1

## JURISDICTION AND VENUE

1. This is a Civil Action authorized by 42 U.S.C. section 1983 to redress the deprivation, under color of the state law, of rights secured by the Constitution of the United States.

   The court has jurisdiction under 28 U.S.C. section 1331 and 1343 (A)(3)

2. The Western District of Pennsylvania is an appropriate venue under 28 U.S.C. section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## PLAINTIFF

3. Plaintiff Christopher Irwin was a patient at University of Pittsburgh Medical Center (U.P.M.C.) while detained by Patrolman Ronald Raymond prior to being removed and incarcerated at Washington County Correctional Facility (W.C.C.F.) during the events described in this complaint. Plaintiff now resides a State prisoner of the State of Pennsylvania in the custody of the Pennsylvania Department Of Corrections. Plaintiff is currently confined in S.C.I. Albion in Albion Pennsylvania.

## DEFENDANTS

4. Defendant Warden Joe Pelzer is the warden of Washington County Correctional Facility he is legally responsible for the operation of Washington County Correctoinal Facility and for the welfare of all the inmates of that prison.

5. Defandant Deputy Warden Temas John Doe is incharge of the supervision of all correctional staff at Washington County Correctional Facility.

6. Defendant Deputy Warden Hamett John Doe is in charge of all correctional staff at Washington County Correctional Facility.

7. Defendant Head Nurse Cheryl M<sup>c</sup>Gavitt is ths medical administrator at Washington County Correctional Facility and is generally responsible for ensuring theprovision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specalized treatment or evaluations.

2

8. Defendant Nurse Esther Jane Doe is the medical administrator at Washington County Correctional Facility (W.C.C.F.).

9. Defendant Nurse Jill Jane Doe is the medical administrator at Washington County Correctional Facility (W.C.C.F.).

10. Defendant Doctor Dirskin John Doe is doctor at Washington County Correctional Facility and is generally responsible for ensuring the provision of medical care to prisoners.

11. Defendant Patrolman Ronald Raymond is traffic officer at Chartiers Township Police Department.

12. Defendant James Horvath is chief of police at Chartiers Township Police Department, and is in charge of officers and patrolmen.

13. Defendant Chartiers Township Police Department, and is in charge of patrolmen, officers and chiefs.

14. Defendant Sheriff John Doe is Sheriff for Allegheny county, and he also serves warrants and transports prisoners.

15. Doctor John Doe is doctor at University of Pittsburgh Medical Center (U.P.M.C.) and was one of the plaintiffs doctors in charge of the plaintiffs health care while he was in the hospital.

16. Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint eachdefendant acted under color of state law.

FACTS

17. On July 7, 2002 Plaintiff was life flighted to University of Pittsburgh Medical Center (U.P.M.C.) after vehicle accident.

18. On July 7,2002 Plaintiff was placed under arrest by Patrolman Ronald Raymond prior to being life flighted to Uuiversity of Pittsburgh Medical Center (U.P.M.C.).

19. On July 7,2002 Plaintiff under went an M.R.I to check his medical condition followed by other medical testing including X-Rays upon his arrival to University of Pittsburgh Medical Center (U.P.M.C.)

20. ON July 7,2002 Plaintiff was placed in a hospital bed in which he could not get out of because he could not move and he had a neck brace on required by doctor John Doe. Plaintiff was in very serious and obvious pain due to vehicle accident.

21. On July 7,2002 Plaintiff was also prescribed pain medication for his injuries do to their seriousness he could not move his neck and back and was in a great deal of pain which led him to be hospitalized and he could not move from hospital bed.

22. On July 7,2002 Plaintiff was in Patrolman Ronald Raymonds custody and custody of the Chartiers Township Police Department at the time of the accident.

23. On July 7,2002 Plaintiff was a Pre-Trial detainee of the Chartiers Township Police Department, and Patrolman Ronald Raymonds at the time of his treatment at University ofPittsburgh Medical Center (U.P.M.C.).

24. On july 9,2002 Plaintiff was Patrolman Ronald Raymonds arrestee Patrolman Ronald Raymond should of checked plaintiffs medical condition prior to having plaintiff removed fromUniversity of Pittsburgh Medical Center (U.P.M.C.).

25. On July 9,2002 Plaintiff was taken in a wheelchair while at University of Pittsburgh Medical Center (U.P.M.C.) for physical therapy where plaintiff could not even get out of wheelchair to preform therapy of any kind due to his serious injuries.

26. On July 9, 2002 Due to plaintiffs medical condition Doctor Jane Doe informed plaintiff he would need to remain in hospital and come back in one week to try physical therapy again because of the seriousness of his injuries.

27. On July 9, 2002 Plaintiff after unable to preform pysical therapy was led back to hospital bed in a wheelchair for rest due to the serious and chronic pain from his neck and back injuries. He had a neck brace on and was not to move because of his injuries due to vehicle accident.

28. On July 9, 2002 Allegheny County Sheriff encountered plaintiff and said that he was removing plaintiff from University of Pittsburgh Medical Center (U.P.M.C.). Due to a bench warrant that Chartiers Township Police Department faxed to Sheriff John Doe And Patrolman Ronald Raymond had Sheriff John Doe remove plaintiff.

29. July 9, 2002 Plaintiff had documents to prove that bench warrant was lifted Sheriff John Doe said he did not care. Chartiers Township Police Department wanted plaintiff in custody so plaintiff could not get away from Patrolman Ronald Raymond and the Chartiers Township Police Department even though plaintiff was already in custody of the Chartiers Township Police Department and Ronald Raymond at that time.

30. On July 9, 2002 Allegheny County Sheriff John Doe acted under Chartiers Township Police Departments and Patrolman Ronald Raymonds Orders and fax of bench warrant sent to Sheriff John Doe. Sheriff coerced Doctor John Doe to sign release papers to be able to remove plaintiff from University of Pittsburgh Medical Center (U.P.M.C.).

31. On or around the end of July 2002, plaintiff was transported to Chartiers Township Police Department for fingerprinting and questioning by Patrolman Ronald Raymond, and Chief James Horvath. Plaintiff asked them why they had Sheriff John Doe remove him from hospital on a Bench Warrant that was lifted they said they wanted to make sure that he was detained. They were still not concerned about plaintiffs medical condition.

5

32. On or around July 10, 2002 Plaintiff was transported to Washington County Correctional Facility (W.C.C.F.) with release papers for medical care including physical therapy orders from Doctor John Doe of University of Pittsburgh Medical Center, and prescriptions for pain medication due to severe and chronic neck and back injuries that the plaintiff suffred.

33. Due to plaintiffs lack of legal ability and unable to contact University of Pittsburgh Medical Center, due to his incarceration is unable to produce documents, affidavits, and other legal materials for exhibits to support complaint, Plaintiff is in need of legal materials to support complaint.

## DENIAL OF MEDICAL CARE

34. On or about July 10, 2002 after being transported to Washington County Correctional Facility. Plaintiff was seen by head Nurse Cheryl M$^C$Gavitt and Doctor Dirskin John Doe Plaintiff had release papers stating their was a need for phsysical therapy and medical treatment including medications prescribed by Doctor John Doe from University of Pittsburgh Medical Center. Head Nurse Cheryl M$^C$Gavitt and Doctor Dirskin John Doe of Washington County Correctional Facility said that their was nothing that they could do they refused plaintiff medical treatment and stated that they do not have physical therapy at this facility, and they would not administer the medications prescribed by plaintiffs doctor from (U.P.M.C.). It was very obvious that plaintiff had a very serious and chronic pain from neck and back injuries due to prior vehicle accident.

35. On or about July 11, 2002 Plaintiff put in for sick call and was refused any medical treatment for his injuries and was refused physical therapy for his serious injuries by head Nurse Cheryl M$^C$Gavitt and Doctor Dirskin John Doe.

36. On or about July 11, 2002 Nurse Esther Jane Doe refused plaintiff medical treatment. Nurse Esther Jane Doe told plaintiff their was nothing she could do because plaintiff had no broken bones. Plaintiff asked Nurse Esther Jane Doe about physical therapy that was prescribed by Doctor John Doe of University of Pittsburgh Medical Center. Nurse Esther Jane Doe said they do not have phyaical therapy at their facility. Nurse Esther Jane Doe also told plaintiff to sign up for sick call and plaintiff did, and all plaintiff got was the run around over and over again.

37. On or about the month of July 2002, Nurse Jill Jane Doe refused plaintiff medical attention a number of times. She denied plaintiff medical atention day after day she eventually had plaintiff placed in disciplinary seregation so she would not have to dealwith the plaintiffs medical problems.

38. From July 10 to October 17, 2002 Plaintiff could not move neck and back due to vehicle accident plaintiff was in a great deal of pain, and could not lay down in bed or sleep due to his injuries and was never prescribed proper medication by (W.C.C.F.). for pain or any medical treatment for his serious and chronic neck and back injuries. And could not perform any activities.

39. From July 10 to October 17, 2002 Plaintiff was refused medical treatment by head Nurse Cheryl M$^C$Gavitt, Doctor Dirskin John Doe, Nurse Esther Jane Doe, and Nurse Jill Jane Doe. They told plaintiff their was nothing they could do for the plaintiffs suffering due to automobile accident that accured on July 7, 2002, and that they would not send plaintiff to physical therapy prescribed by University Of Pittsburgh Medical Centers Doctors. They eventually requested x-rays from (U.P.M.C.) and result of the x-rays plaintiff had no broken bones. So Defendants continued to refuse medical treatment for plaintiffs serious and chronic nack and back injuries.

40. From July 7 to October 17, 2002 Plaintiff signed up for sick call a numerous amount of times, and never received any medical treatment for his neck and back injuries that he was suffering from.

7

## EXHAUSTION OF LEGAL REMEDIES

41.  Plaintiff Christopher Irwin used the prisoner grievance procedure available at Washington County Correctional Facility (W.C.C.F.). To try to solve the problem.

42.  Plaintiff Christopher Irwin presented the facts relating to the complaint in the grievance, and had proper signatures on the grievance.

43.  The following day plaintiff Christopher Irwin received the grievance back signed by Nurse Esther Jane Doe. The Wardens never responded to the grievance. Plaintiff does not even know if grievance made it to the Warden.

44.  The day plaintiff received the grievance back, Nurse Esther Jane Doe was on the unit administering meds. Plaintiff asked Nurse Esther Jane Doe why the grievance did not go to the warden, she had no answer. Then Nurse Esther Jane Doe tried to offer plaintiff tylenol, 3 times a day. Washington County Correctional Facilitys policy offers inmates tylenol 1 time a day. It appeared as if the Nurse was trying to be nice to the plaintiff to cover something up Plaintiff never received proper medical treatment. The pain was very serious and obvious.

THIS ALL ACCURED DUE TO A DELIBERATE INDIFFERENCE

## LEGAL CLAIMS

45.  Plaintiff reallege and incorporate by reference paragraphs 1-45.

46.  The Defendants Violated: Deliberate indifference to medical needs, False arrest, False imprisonment, Liability, Cruel and unusual punishment, A due process violation, and the Plaintiffs Constitutional rights under the EIGHT and FOURTEEN Amendments to the United States Constitution.

CASE CITES

47. Conley V. Gibson, 355 U.S. 41, 45-46 (1957) The supreme court stated that in considering a motion to dismiss a pro-se complaint should be held to less strict standards than a motion drafted by a lawyer.

48. Section 1983 Cruz V. Beto, 405 U.S. 319, 322 (1972) In that case court stated that a complaint "Should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief".

WHEREFORE, plaintiff requests that this court enter judgement granting plaintiff.

49. A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

50. Compensatory damages in the amount of $ 100,000 against each defendant, jointly and severally.

51. Punitive damages in the amount of $ 100,000 against each defendant.

52. Plaintiff's cost in this suit.

53. Any additional relief this court deems just proper, and equitable.

Dated: 6/24/05      *[signature] Christopher Irwin*
                    Respectfully submitted,
                    Christopher Irwin

VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, I certify under penalty of perjury that the foregoing is true and correct.

Executed at Albion Pennsylvania on March 31, 2005

*[signature]*
Christopher Irwin

9

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the within PLAINTIFF CHRISTOPHER IRWIN's MOTION TO AMEND COMPLAINT has been served on this 24 day of June, 2005, upon all parties individually by First class, Mail, POSTAGE PRE-PAID.

Warden Joe Pelzer, Deputy Warden Temar John doe, Deputy Warden Hanett John doe, Head Nurse Cheryl McGavitt, Nurse Esther Jane doe, Nurse Jill Jane doe, Doctor D. Irskiw John doe
100 West Cherry Ave
Washington PA, 15301

Sheriff John doe
436 Grant St #111
Pittsburgh PA, 15219

Chief James Horvath
Chartiers Twp. Police
Dept. Pike Ave.
Meadow Lands PA,

By: /s/ Christopher Irwin
CHRISTOPHER IRWIN