IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER IRWIN,<br>          PLAINTIFF<br><br>       VS.<br><br>NURSE 1, NURSE 2, NURSE 3,<br>WARDEN 1, WARDEN 2, WARDEN 3,<br>DOCTOR DIRSKIN JOHN DOE,<br>DOCTOR JOHN DOE, (W.C.C.F.)<br>WASHINGTON COUNTY CORRECTIONAL<br>FACILITY.<br>SUED IN THEIR INDIVIDUAL CAPACITES.<br><br>PATROLMAN RONALD RAYMOND, CHIEF<br>JAMES HORVATH, CHARTIERS TWP.<br>POLICE DEPT.<br>SUUED IN THEIR INDIVIDUAL CAPACITIES.<br><br>DOCTOR JOHN DOE (U.P.M.C.)<br>SHERIFF JOHN DOE, ALLEGHENY<br>COUNTY.<br>SUED IN THEIR INDIVIDUAL CAPACITES.<br><br>       Defendants, | CIVIL DIVISION<br><br>C.A. No.   04 - 246   ERIE |

MOTION TO AMEND, CORRECT COMPLAINT

AND NOW this date 8th day of February, 2006, Plaintiff Christopher Irwin filed this Motion to Amend Correct Complaint, And is here by stated as follows;

1. STATEMENT OF FACTS

On August 24th, 2004 the Plaintiff filed a complaint against the Washington County Correctional Facilitys, Nurses, Wardens, and doctors. And Patrolman Ronald Raymond, And Chartiers Township Police Department. "42 U.S.C. 1983".

On January 30th, 2006 This Honorable Court ordered that Plaintiffs Motion for Appointment of Counsel [Document#39] Will be held in abeyance pending further consideration by this court.

And further ordered that Plaintiffs Motion for extension of time to file a response to the motion to dismiss that has been filed by Defendants Chartiers Township police Department and Patrolman Ronald Raymond [Document#39] is GRANTED for a period of ten (10) days from the date of this order.

1

## 2 JURISDICTION AND VENUE

1. This is a Civil Action authorized by 42 U.S.C. section 1983 to redress the deprivation, Under the Color of State law, of rights secured by the Constitution of the United States. The court has Jurisdiction under 28 U.S.C. section 1331 and 1343 (A) (3). The court has Supplemental Jurisdiction over Plaintiff's State Law clames under. 28 U.S.C. 1367

2. The Western District of Pennsylvania is an appropriate Venu under 28 U.S.C. section 1391 (b)'(2) because it is where the events given rise to this claim occured.

## 3 PLAINTIFF

3. Plaintiff Christopher Irwin was at times mentioned Herein an Arrestee in the State of Pennsylvania in the custody of Patrolman Ronald Raymond and Chartiers Township Police Department, in Meadowlands PA. Plaintiff was also a patient in the State of Pennsylvania, and in the custody of University of Pittsburgh Medical Center. (U.P.M.C.) of Pittsburgh PA. Under their Doctors, Nurses and Specialists care Until he was removed against his will although he had Severe and Chronic pain. Plaintiff was removed by Sheriff John Doe of Allehgeny County and then transported to the Allegheny County Jail until the following day he was transported to (W.C.C.F.) in which he was still an Arrestee. Plaintiff was also Prisoner in the State of Pennsylvania in the custody of Washington County Correctional Facility, in Washington County PA. He is currently confined in S.C.I. Albion in Albion PA.

## 4 DEFENDANTS

4. Defendant Warden Joe Pelzer upon information and belief is the Warden at Washington County Correctional Facility. (W.C.C.F.) He is legally responsible for the operation of (W.C.C.F.) and for the welfare of all the inmates of that Prison.

5. Defendant Deputy Warden Temas John Doe whose name is still previously unknown to Plaintiff. Upon information and belief is Warden of (W.C.C.F.) and is incharge of the supervision of all Correctional staff, Doctors and Nurses at the (W.C.C.F.) And is responsible for the welfare of all the inmates of that Prison.

6. Defendant Deputy Warden Hamet John Doe Whose name is still previously unknown by Plaintiff. And is incharge of all Correctional staff, Doctors and Nurses at (W.C.C.F.) And is responsible fof the welfare of all the inmates of that Prison.

7.  Defendant <u>Head Nurse Cheryl M<sup>c</sup>Gavitt</u> Upon information and belief is head of medical and is responsible for making sure that inmates receive proper treatment. at the Washington County Correctional Facility, and specifically for scheduling medical appointments outside the facility whed a prisoner needs specialized treatment or evaluations.

8.  Defendant <u>Nurse Esther Jane Doe</u> Upon information and belief is the Nurse at (W.C.C.F.) and one of the nurses in charge of administering medication. She is also incharge of medical treatment and for scheduling appointments for sick call.

9.  Defendant <u>Nurse Jill Jane Doe</u> Upon information and belief is the Nurse at (W.C.C.F.) and is one of the nurses in charge of administering medication. She is also incharge of medical treatment and for scheduling appointments for sick call.

10. Defendant <u>Doctor Dirskin John Doe</u> Upon information and belief is Doctor at the Washington County Correctional Facility, and is generally responsible for ensuring the provision of medical care to prisoners and examinations. Doctor Dirskin is also responsible for providing professional treatment to the prisoners as well.

11. Defendant <u>Doctor John Doe</u> Whose name is still previously unknown to plaintiff. Upon information and belief is Doctor at the Washington County Correctional Facility. And is in charge of providing proper medical treatment to the prisoners at that facility. He is also responsible for using professional judgement when evaluations are needed and outside Hospital or Psycial Therapy care should be provided.

12. DEFENDANT <u>Washington County Correctional Facility.</u> Responsible for providing a safe enviroment and addiquate staffing as well as doctors and nurses.

13. Defendant <u>Patrolman Ronald Raymond</u> Upon information and belief is traffic officer at the Chartiers Township Police Department.

14. Defendant <u>James Horvath</u> is Chief of Police at the Chartiers Township Police Department, and is in charge of officers and patrolmen, and providing safety within the community.

15. Defendant Chartiers Township Police Department They are incharge of Patrolmen Police officers, and Police Chiefs. They are also incharge of safety through the community.

16. Defendant <u>Sheriff John Doe</u> Whose name is still previously unknown to the Plaintiff. Upon information and belief is Sheriff for Allegheny County, and serves warrants and transports prisoners, and is responsible for their safety.

17. Defendant <u>Doctot John Doe</u> Whose name is still previously unknown to Plaintiff. Upon information and belief is Doctor at the University of Pittsburgh Medical Center. (U.P.M.C.) and was one of the plaintiffs Doctors, and was incharge of the medical

18. EACH DEFENDANT IS SUED IN HIS OR HER INDIVIDUAL CAPACITY. At all times mentioned in this complaint each defendant acted under the color of State law.

### 5.FACTS

19. On July 7, 2002 At aproximately 1:30 A.M. Plaintiff was in a very serious automobile accident, Defendant Patrolman Ronald Raymond of the Chartiers Township Police Department, arrived on scene of the Traumatic accident and shortly after placed Plaintiff under arrest.

20. Plaintiff was in a substantial amount of pain, and on his knees and unable tomove. Patrolman Ronald Raymond then decided not to handcuff Plaintiff. The Patrolman then called for Life Flight, Meda-Vac assistance.

21. At aproximately 2:30 A.M. Plaintiff arrived at University of Pittsburgh Medical Center. Plaintiff was then cut from his clothes and placed with various medical equi tment. Plaintiff then under went an M.R.I. to check his medical condition followed by other medical testing including X- Rays. From (U.P.M.C.) Doctors , Specialists, and Nurses.

22. On July 8 2002 Plaintiff was in (U.P.M.C.) in a hospital bed with a neck brace and other medical equiptment hooked up to him, Plaintiff had a very serious and chronic neck and back injury. Plaintiff realized that he could not move due to the seriousness of the injuries that he was suffering from. plaintiff felt depressed, and destress because of traumatic automobile accident.

23. Plaintiff was perscribed pain medication by Doctor John Doe from (U.P.M.C.) Whose name is still presently unknown to Plaintiff. Plaintiff did not move out of bed on this day, due to the seriousness of his injuries, and chronic neck and back pain. He still suffered from due to prior automobile accident.

24. On July 9 2002 Plaintiff had some of the various medical equitment removed by the Nurses. Then the Nurses at (U.P.M.C.) were trying to get Plaintiff to move his arms and try to sit him up in the bed. Plaintiff could not respond to the Nurses requests. This was due to the continuous and substantial pain he still suffered.

25. Nurses at the (U.P.M.C.) later returned after administering Plaintiff pain medication and helped Plaintiff into a wheelchair. The Nurses then transported Plaintiff down to see a Specialist in the Physical Therapy Department. The specialists then tried to help the Plaintiff move or try to get up from the wheelchair to try to preform Physical Therapy. Plaintiff could not move due to the continuious pain that was very essential, due to his neck and back injuries that he still suffered from.

26. The Specialists in the Physical Therapy Department then informed Nurses and Plaintiff he would need to remain in hospital, and come back for Therapy in one week. This was due to the seriousness of the injuries and the significant pain he suffered. because he was unable to perform any therapy that the specialists requested.

27. Plaintiff was in Patrolman Ronald Raymond, Chief James Horvath and the Chartiers Township Police Departments custody under the Doctors, Nurses and Specialists care, and had not heard from them yet.

28. On July 9 2002 After Plaintiff returned from being unable to preform Physical Therapy due to severe neck and back injuries and continuious pain he suffered from. Allegheny County Sheriff John Doe whose name is still presently unknown to Plaintiff encountered Plaintiff and said that he was removing Plaintiff against his will to stay and receive medical treatment from the Hospitals Doctors, Nurses and Specialists.

29. Sheriff John Doe told Plaintiff this was due to a Bench Warrant that the Chartiers Township Police Department and Ronald Raymond had faxed to the Sheriffs Department.

30. Plaintiff had documents to prove that the Bench Warrant was lifted. And that Plaintiffs injuries and Doctors orders required him to remain in (U.P.M.C.) Under the supervision of the Doctors and Nurses. Plaintiff also stated that he was in a great deal of pain and could not move. It was very obvious to anyone that the pain was serious and chronic and continued to present difficulty to the Plaintiff.

31. Sheriff Upon information and belief then proceeded to coerce Doctor John Doe to sign release papers to be able to remove the Plaintiff from the University of Pittsburgh Medical Center. (U.P.M.C.) despite Plaintiffs substantial injuries.

32. Plaintiff being Patrolman Ronald Raymond, Chief James Horvath and the Chartiers Township Police Departments Arrestee and in there custody under the Hospitals Doctors, Nurses and Specialists care, they knew or should of known that the Sheriff would be removing the Plaintiff from the hospital (U.P.M.C.) soon due to the Bench Warrant the Patrolman and his Department had faxed. Patrolman Ronald Raymond never checked with the Plaintiffs Doctors to see his current medical condition or the seriousness of his injuries the Plaintiff still suffered from.

33. Upon information and belief Defendants Sheriff John Doe, Patrolman Ronald Raymond, Chief James Horvath, and the Chartiers Township Police Department. Were responsible for the Plaintiff being removed from (U.P.M.C.). Despite his continuing severe neck and back injuries and chronic pain that he suffered from, that his Doctors and specialists diagnosed him with. Defendants aggravated his injuries by removing him eventhough Plaintiff continued to cry for help due to the chronic pain and injuries he still suffered.

34. On July 9 2002 Plaintiff was forced against his will and apparent serious and chronic pain from his neck and back injuries to leave (U.P.M.C.) with Sheriff John Doe.

35. Allegheny County Jail, upon arrival Plaintiff was forced to walk despite his persistent back and neck pain. It was difficult and very painful and discomfroting and then He realized He was having serious trouble trying to sit down it was very humilating. he was still in a hospital gown in front of all the other inmates. The inmates started asking all kinds of questions.

36. Plaintiff spent the night at the Allegheny County Jail in the infirmary. he could not move without a substatial amount of continuing pain, Plaintiff started to feel a great deal of mental anguish, shame and grief.

37. Around July 10 2002 Plaintiff was transported to the Washington County Correctional Facility, (W.C.C.F.). Plaintiff had release papers for medical care including Physical Therapy orders from Doctor John Doe Whose name is still presently unknown to Plaintiff from University of Pittsburgh Medical Center.(U.P.M.C.). Plaintiff also had prescriptions for pain medication due to severe and chronic neck and back injuries that Plaintiff still suffered a substantial amount of pain.

38. Plaintiff was seen by head Nurse Cheryl M$^C$Gavitt and Doctor Dirskin John Doe. After a short examination they told Plaintiff their was not much help they could provide, and that the (W.C.C.F.) did not have Physical Therapy avaliable to him.

39. Plaintiff later found out that Defendants Cheryl M$^C$Gavitt and Doctor Dirskin John Doe, and Doctor John Doe would not administer the medications prescribed by the Plaintiffs Doctors from (U.P.M.C.). It was very obvious that he was suffering due to continuing substantial pain from his current injuries.

40. Plaintiff was wondering why he never heard from Defendants from the Chartiers Township Police Department being that he was their arrestee.

41. On or around the next day Plaintiff put in for Sick Call. When he was seen he was prescribed over the counter pain medication, and did not receive any necessary medical treatment or any kind of Physical Therapy for his continuing misery he still suffered. That was the only treatment Plaintiff received that day from Defendants Cheryl M$^C$Gavitt, Doctor Dirskin.

42. During the month of July 2002 Plaintiff did not receive appropriate medical treatment. The Defendant Nurse Esther Jane Doe told Plaintiff that she could do nothing. And that He needed to sign up for sick call, and that she would give me a heating pad.

43. Plaintiff then went back to his cell, on more than one occasion and felt a great deal of grief, humiliation and embarrassment. This was due to being around other inmates who would stare at me because of the way He moved and walked due to the difficulty and discomfrot. And this was due to the continuing chronic pain He still suffered.

7

44. Plaintiff continued to have persistent neck and back pain, and very serious trouble laying down or trying to sleep and a great deal of pain trying to sit down and repeatedly put in for sick call. The Plaintiff always received little help or just offered tylenol, motrin, or some other over the counter medication. He contunued to deal with the treatment because He felt great grief and thought that at least He was getting some kind of medical attention, it was very depressing.

45. Plaintiff continued to complain of severe pain and discomfrot so often that Nurse Esther Jane Doe asked the Plaintiff to sign papers to be able to receive his X-Rays from (U.P.M.C.). The Nurse said she received them within a day or two. Nurse Esther told Plaintiff she could do nothing that he had no broken bones and they would continue his current medication and an occasional heating pad or ice for his continuing severe neck and back pain.

46. On or around the end of July 2002, Plaintiff was transported to the Chartiers Township Police Department for finger printing and questioning by Patrolman Ronald Raymond, and Chief James Horvath. The Defendants were still not concerned about the Plaintiffs current continuing medical condition or his serious and chronic pain or injuries that he suffered that were still very obvious. This would be the first time Plaintiff seen Patrolman Ronald Raymond since July 7, 2002 when he placed him under arrest. Patrolman never enquired about plaintiff before that date.

47. Plaintiff repeated to put in for sick call and the Nurses and Doctors at (W.C.C.F.) would examine him and ask him to try to move my arms and neck in which if he tried there would be little movement and a lot of serious and chronic pain. and they would just continue the over the counter pain medication and no other treatment, Plaintiff really felt dispar, and humiliation but continued to get help being it was a little or none.

48. Plaintiff could not attempt to try to do any activities at this point in time. Due to the substantial amount of pain, he could not even sit down in a chair that the pain was so enormious. There was a lot of grief and humiliation during his stay at (W.C.C.F.) this far in time.

49. Plaintiff continued to ask nurses day after day for treatment and got very little attention from them they just kept him hanging on with the medication and if he said it would not help Defendants then would just administer another over the counter medication. Plaintiff then filed a grievance to the Warden about not receiving required medical care, from Defendants at this facility, (W.C.C.F.).or the care Plaintiffs Doctors, Specialists and Nurses required. Also the severe and chronic that he suffered, and distress.

50. The day plaintiff received the grievance back, Nurse Esther Jane Doe was on the unit administering meds. Plaintiff asked Nurse Esther Jane Doe why the grievance did not go to the warden, she had no answer. Then Nurse Esther Jane Doe tried to offer plaintiff tylenol, 3 times a day. Washington County Correctional Facilitys policy offers inmates tylenol 1 time a day. It appeared as if the Nurse was trying to be nice to the plaintiff to cover something up Plaintiff never received proper medical treatment. The pain was very serious and obvious.

51. Plaintiff was never in the clinic at the (W.C.C.F) longer than a week or two he was in general population. Plaintiff continued to feel embarrassed being around other inmates. This was due to his condition and the way he had to walk due to his persistent back and neck pain he suffered, he could not even move his neck is was stiff. He still was not able to sit down with out a great deal of pain, or perticipate in any activities or exercise. Plaintiff was still suffering much distress, and was beginning to get depressed, things just did not seem right.

52. Nurses Esther and Jill Jane Doe came to the pod 4 times a day, so Plaintiff would always try to receive some kind of medical attention for his continuing chronic and severe pain that never seemed to go away while he was at the (W.C.C.F.). Some days were just better than others. But the pain and suffering never stopped.

53. Plaintiffs belief, that continuing to repeatedly sign up for sick call or asking the Doctors, Nurses and Nurses on the pod for treatment or medication that the Defendants treated him as a nuisance. Because he usually received some kind of attitude from them, and little medical attention. Plaintiff really felt humiliated at that point in time, and depressed it was very stressing to him.

54. Defendant Jill Jane Doe Eventually had Plaintiff placed in the (S.H.U.) disciplinary seregation so she would not have to deal with the Plaintiff; or his medical condititon, or his continuing cry for medical attention.

55. Plaintiff believes that defendants at the Washington County Correctional Facility, violated his constitutional rights continually throughout periods in question, by the continual unlawful acts and continuing constitutional torts.

56. Defendants medical attention that plaintiff received was no more than over the counter medication and a lot of run around from one nurse to another, and from doctor to nurse just to keep plaintiff thinking that eventually he would receive, proper professional care that was prescribed by his doctor prior to his commitment to the (W.C.C.F.).

57. Plaintiff suffered and still suffers mental anguish and physical anguish due to severe automobile accident, that if his injuries were treated with professional care that was prescribed and physical therapy necessary and pain medication prescribed by professional doctor, that he would not be in the condition that he is currently in.

58. Plaintiff believes that he was illegally committed at the (W.C.C.F) due to his papers that required treatment that the facility did not provide, and that his condition upon arrival required hospital care.

59. Plaintiff has never received a hearing on bench warrant that Sheriff John Doe and defendants at Chartiers Township Police Department arrested him on.

60. Plaintiff has no prior legal experience in filing documents, prior to this complaint.

61. Plaintiff does not know how to proceede with Discovery, or anything further than complaint.

62. Plaintiff believes he needs counsel to be able to receive proper documents from Hospital, Jail, Police Dept. or what to request.

62. Plaintiff currently has mental health and back and neck disabilitys, also trouble trying to understand laws due to mental health problems.

63. Plaintiff believes facts in complaint can be proved to show violations of his Constitutional Rights, with documents from defendants and expert testimony from medical expert.

11

64. Plaintiff believes that the Defendants at Chartiers Township Police Department. Illegally seized plaintiffs blood and urine sample or documents related to plaintiffs medical treatment while he was at University of Pittsburgh Medical Center.

65. 6 EXHAUSTION OF Legal REMEDIES

Plaintiff Christopher Irwin use the prisoner grievance procedure available at the Washington County Correctional Facility (W.C.C.F.) to try to resolve the problem. Plaintiff presented the facts relating to the complaint in the grievance and had the proper signatures that was required to submit the grievance. The following day Plaintiff received the grievance back signed by Nurse Esther, not the warden in which plaintiff sent it to. This problem occures at the (W.C.C.F.) to this day, or they refuse to give inmates grievance at all.

7 Legal Claims For Relief

66. Plaintiff reallege and incorporate by reference paragraphs, 1-65 that his Constitutional Rights and State Law Rights were continually violated.

12

67. Defendants, Sheriff John Doe, and all Defendants at Chartiers Township Police Department. Conspirated to the result of an unreasonable seizure, unlawful imprisonment, malicious prosecution, by arresting plaintiff on bench warrant, which led to malicious abuse of process, unlawful arrest, which created an intentional infliction of physical and mental anguish, continual unlawful acts that led to continual constitutional torts, which violated plaintiffs Rights Equal Protection Substantive Due process violation the continual unlawful acts violated plaintiffs Rights and constituted state law violations, and violations under the Fourth, Fourteenth Amendments of the United States Constitution.

68. Defendants Sheriff John Doe Doctor John Doe (U.P.M.C.) and all Defendants at the Chartiers Township Police Department. Denial of medical care to an arrestee, violated plaintiffs Rights and constituted the Objective standard of Reasonableness under the Fourth Amendment of the United States Constitution.

69. Defendant Sheriff John Doe Doctor John Doe (U.P.M.C.) and all Defendants at the Chartiers Township Police Department,

13

violated plaintiffs rights and constituted the Due Process Clause that protects Pre-Trial Detainees from deprivation of medical treatment that amounts to punishment under the Fifth and Fourteenth Amendments of the United States Constitution, and Fourteenth Amendment.

70. Defendants Sheriff John Doe, Doctor John Doe (U.P.M.C) and all Defendants at the Chartiers Township Police Departments continual unlawful acts and continual conspiracy were Deliberate Indifference to plaintiffs serious medical needs and constituted Cruel and Unusual punishment, By denying plaintiff medical care for his serious and chronic automobile injuries he suffered. Violated plaintiffs rights and constituted a substantive Due Process violation, under the Eighth Amendment of the United States Constitution, and Fourteenth Amendment.

71. Defendants Patrolman Ronald Raymond and Chief James Horvath and Chartiers Township Police Department. Unlawfully seized plaintiff's blood and urine sample or plaintiffs Hospital Records, and violated plaintiffs Rights that led to a violation of the Fourth Amendment of the United States Constitution.

14

72. Defendants Doctor John Doe (W.C.C.F.) Doctor Dirskin, Nurse Esther, Jill, Cheryl McGavitt, Warden Joe Pelzer, Hamett, Temas from Washington County Correctional Facility, created continual constututional torts, intentional infliction of physical and mental anguish, continual unlawful acts, resulting to plaintiffs suffering that continued until time in question and to this day plaintiff, sufferes physical and mental anguish, violated plaintiffs state law rights and constituted a violation of plaintiffs rights under the Eighth Amendment for deliberate indifference to plaintiffs serious medical needs that constituted cruel and unusual punishment, and a substantive due process violation under the Eight Amendment of the United States Constitution. And Fourteenth Amendment.

73. Defendants, Wardens, Nurse Jill, violated plaintiffs substantive due process rights and were deliberate indifference to plaintiffs serious medical needs and constituted cruel and unusual punishment, by placing plaintiff, or allowing him to be placed in the (S.H.U.) seregation without proper treatment for his severe and chronic medical injuries violated plaintiffs rights under the Eighth Amendment of the United States Constitution. And Fourteenth Amendment.

15

74. Defendants ALL of the Defendants at the Washington County Correctional Facility, in Housing Plaintiff at the (W.C.C.F.) created continual unlawful acts and were deliberate indifferent to plaintiffs serious and chronic medical and mental health needs that constituted Cruel and Usual punishment and violated plaintiffs Rights under the Eighth Amendment of the United States Constitution. And Fourteenth Amend.

75. Defendants ALL of the Defendants at the Washington County Correctional Facility, violated plaintiffs Rights and constituted the Due process Clause that Protects Pre-trial Detainees from deprivation of medical treatment that amounts to punishment under the Eighth and Fourteenth Amendments of the United States Constitution.

76. Defendants ALL of the Defendants at the (W.C.C.F.) By committing plaintiff at the facility that could not treat plaintiffs serious and chronic medical injuries was unlawful and constituted continual unlawful acts, continual torts. That plaintiff suffered severe physical and mental anguish. Defendants acted with reckless disregard to plaintiffs serious and chronic physical and mental injuries that he suffered and continues to suffer, were state law violations,

16

77. Defendants all of the defendants at the (W.C.C.F.) continual denial of medical care to an arrestee, violated plaintiffs rights and constituted the objective standard of reasonableness under the Fourth Amendment of the United States Constitution.

In considering the motion all facts properly pleaded are construed as being true and all reasonably factual inferences are deemed to be in plaintiffs favor United States v. Reilly, 385 F.2d 225 (10th Cir 1967).
Guy v. Liederbach, 501 PA. 47, 459 A.2d 744 (1983).

But, conclusions of law or unjustified inferences are not to be drawn from the face of the complaint. Buchanan, v Brentwood Federal Savings and Loan Association 457 PA 135, 320, A.2d 117 (1974).

## CASE CITES

**78.** Conley V. Gibson, 355 U.S. 41, 45-46 (1957) The supreme court stated that in considering a motion to dismiss a pro-se complaint should be held to less strict standards than a motion drafted by a lawyer.

**79.** Section 1983 Cruz V. Beto, 405 U.S. 319, 322 (1972) In that case court stated that a complaint "Should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief".

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting Plaintiff:

**80.** A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

**81.** Compensatory damages in the amount of $_____ against each defendant, jointly and severally.

**82.** Punitive damages in the amount of $_____ against each defendant.

**83.** A jury trial on all issues triable by jury

**84.** Plaintiff's cost in this suit.

**85.** Any additional relief this court deems just proper, and equitable.

Dated: 3/3/06    *[signature]*

Respectfully submitted,
Christopher Irwin

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, I certify under penalty of perjury that the foregoing is true and correct.

Executed at Albion Pennsylvania on 3/3/ , 2006

*[signature]*
Christopher Irwin

Plaintiff is indigent and cannot make copys for Defendants can you please help thank you

[signature]