## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER IRWIN,        )<br>            Plaintiff        )<br>                                )<br>        v.                      )<br>                                )<br>HEAD NURSE CHERYL MCGAVITT,  )<br>et al.,                         )<br>            Defendants.    ) | Civil Action No. 04-246 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment filed by Defendants Head Nurse Cheryl McGavitt, Nurse Esther Jane Doe, and Nurse Jill Jane Doe [Document # 64] be granted.

**II.    REPORT**

**A.    Relevant Procedural History**

On August 27, 2004, Plaintiff Christopher Irwin, an inmate incarcerated at the State Correctional Institution at Albion ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Originally named as Defendants were: Nurse 1, Cheryl Jane Doe ("Nurse Cheryl"); Nurse 2, Esther Jane Doe ("Nurse Esther"); Nurse 3, Jill Jane Doe ("Nurse Jill"); Joe Pelzer ("Pelzer"), Warden at Washington County Correctional Facility ("WCCF"); and Patrolman Ronald Raymond of the Chartiers Twp. Police Department ("Raymond"). In his Complaint, Plaintiff alleged that Defendants violated his rights under the eighth amendment to the United States Constitution by depriving him of medical treatment for injuries he suffered to his neck and back as a result of a motor vehicle accident that occurred just prior to his arrest. (See Complaint at Section III).

Plaintiff subsequently obtained leave to file an Amended Complaint on or about April 19, 2005 [Document # 20], and the following Defendants were added: Temas John Doe, Deputy

Warden at WCCF ("Temas"); Hamett John Doe, Deputy Warden at WCCF ("Hamett"); Doctor Dirskin John Doe, WCCF ("Dr. Dirskin"); James Horvath, Chief of Police at the Chartiers Twp. Police Department ("Horvath"); Chartiers Twp. Police Department ("Chartiers"); Sheriff John Doe, Sheriff of Allegheny County ("Allegheny County Sheriff"); and Doctor John Doe at the University of Pittsburgh Medical Center ("Dr. John").[1]  The Amended Complaint also more specifically identified Defendant Nurse Cheryl as Head Nurse Cheryl McGavitt, Medical Administrator at WCCF.

In his Amended Complaint, Plaintiff alleged that Defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights, and violated his due process rights under the Fourteenth Amendment.  In addition, Plaintiff raised state law claims of false arrest and false imprisonment. (Document # 20 at ¶ 46).  As relief for his claims, Plaintiff has sought declaratory relief, as well as compensatory and punitive damages.

On March 14, 2006, upon consideration of Defendants' motion to dismiss Plaintiff's Amended Complaint, this Court issued a Report and Recommendation recommending dismissal of Plaintiff's claims against Defendants Pelzer, Raymond, Temas, Hamett, Dr. Dirskin, Chartiers, Allegheny County Sheriff, and Dr. John. [Document # 46].  In addition, this Court recommended that Plaintiff's claims against Defendants Nurse Cheryl, Nurse Esther, and Nurse Jill, be dismissed to the extent that they arise from events that occurred prior to August 27, 2002. [Id.]. By Memorandum Order dated April 3, 2006, District Judge Sean J. McLaughlin adopted this Court's Report and Recommendation and, as a result, Defendants Pelzer, Raymond, Temas, Hamett, Dr. Dirskin, Chartiers, Allegheny County Sheriff, and Dr. John were dismissed from this case. [Document # 47].

Defendants Nurse Cheryl, Nurse Esther, and Nurse Jill have now filed a motion for summary judgment [Document # 63] seeking to dismiss Plaintiff's remaining Eighth

---

[1] According to the docket entries in this case, it appears that Defendants Temas, Hamett, Dr. Dirskin, Dr. John, and Allegheny County Sheriff were never served with copies of the Amended Complaint in accordance with this Court's Order dated April 18, 2005 [Document # 19], nor has an attorney entered an appearance on behalf of any of these Defendants.

Amendment claim against them, based upon the following arguments: (i) Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act; (ii) Plaintiff's claims are barred by the applicable statute of limitations; and (iii) Plaintiff's has failed to state a claim under the Eighth Amendment based upon deliberate indifference to a serious medical need. Plaintiff has since filed a response in opposition to Defendants' motion. [Document # 68]. This matter is now ripe for consideration.

### B. Relevant Factual History

Plaintiff alleges that on July 7, 2002, he was placed under arrest following a motor vehicle accident, and was then life flighted to the University of Pittsburgh Medical Center ("UPMC") for medical treatment. (Amended Complaint at ¶¶ 17, 18). As a result of the accident, Plaintiff suffered injuries to his neck and back. (Amended Complaint at ¶ 21). At UPMC, Plaintiff was placed in a neck brace and prescribed pain medication on July 7, 2002. (Amended Complaint at ¶¶ 21, 22).

On or about July 10, 2002, Plaintiff was transported from UPMC to WCCF. Plaintiff claims that Defendants Nurse Cheryl, Nurse Esther, Nurse Jill, refused to provide medical treatment for his injuries from July 10, 2002 to October 17, 2002.[2]

### C. Standard of Review
#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the

---

[2] As noted earlier, any claim that Defendants failed to treat Plaintiff's injuries prior to August 27, 2002, has been dismissed by Judge McLaughlin's Order dated April 3, 2006. [Document # 47].

mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact ⊲to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v.

DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C. The Exhaustion Requirement and Procedural Default

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirements that an inmate exhaust administrative remedies applies to all inmate

5

suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002).  See also Concepcion v. Morton, 306 F.3d 1347  (3d Cir. 2002) (for history of exhaustion requirement).  Administrative exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Thus, federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.  Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).  However, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion").  There is no "futility" exception to the administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

In addition, the United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context.  Spruill v. Gillis,  372 F.3d 218, 228-229 (3d Cir. June 18, 2004).  The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id.  Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### D.     Exhaustion and Procedural Default applied

In order to exhaust administrative remedies, an inmate must appeal a grievance through all administrative levels of appeal at the inmate's institution.  In this case, the applicable grievance procedures are set forth in the WCCF Rule Book, which requires a formal grievance to be filed by the inmate within five (5) days of the circumstances or incident at issue. (See Document # 64, Defendants' Brief, Exhibit 1 at p. 1 (internal p. 8)).  The inmate is to deliver the grievance to the Housing Unit Officer or Shift Commander, who then signs off on the grievance and forwards it t the Deputy Warden of Security for disposition. (Id.).  If the inmate is not satisfied with the decision of the Deputy Warden of Security, he must file an appeal to the Warden within two working days of receiving the Deputy Warden's decision. (Id.).  The Warden is then required to review the appeal and provide a written response to the inmate within five working days.  The decision of the Warden is deemed to be final. (Id.).

In this case, the only grievance filed by Plaintiff was dated August 21, 2002, regarding Defendant Nurse Esther's alleged refusal to give him Motrin or Tylenol for his headache. (See Document # 64, Defendant's Brief, Exhibit 2).  This grievance was disapproved by Defendant Nurse Cheryl on August 22, 2002. (Id.).  Not only did Plaintiff fail to appeal the disapproval of his grievance to the Warden in accordance with WCCF's written grievance procedures, the grievance only pertains to actions that occurred prior to August 27, 2002 and, thus, raises a claim that is barred by the applicable statute of limitations.  The record is devoid of any other grievances filed by Plaintiff regarding actions that may have occurred on or after August 27, 2002. Despite submitting affidavits from other inmates intended to show that "WCCF clearly does not provide grievances or help to understand how to file one or an appeal," the record demonstrates that Plaintiff was, in fact, able to file a grievance on August 21, 2002, and,

7

presumably, had the same ability to file a grievance after that date, if he chose to do so. (Id.; Document # 68 at p. 1 and attached exhibits).

Based on the record before this Court, it appears that Plaintiff did not avail himself of the right to file a grievance regarding any actions that may have been taken by Defendants Nurse Cheryl, Nurse Esther, and/or Nurse Jill after August 27, 2002, in violation of his constitutional rights. As a result, Plaintiff has failed to exhaust his administrative remedies and this Court is barred from hearing Plaintiff's claims.

### III    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment filed by Defendants Head Nurse Cheryl McGavitt, Nurse Esther Jane Doe, and Nurse Jill Jane Doe [Document # 64] be granted, and this case be dismissed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: March 21, 2007

cc:    The Honorable Sean J. McLaughlin
       United States District Judge